No. 18-55331

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

**GREAT MINDS**,

*Plaintiff-Appellant,*

v.

## OFFICE DEPOT, INC.

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Central District of California
No. 2:17-cv-07435-JFW-E
Hon. John F. Walter

## BRIEF OF *AMICUS CURIAE* CREATIVE COMMONS CORPORATION
## IN SUPPORT OF APPELLEE AND
## AFFIRMANCE OF THE DISTRICT COURT

Diane M. Peters
CREATIVE COMMONS
CORPORATION
P.O. Box 1866
Mountain View, CA 94042
(415) 429-6753

Andrew M. Gass
Elizabeth H. Yandell
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Amicus Curiae Creative Commons Corporation*

## CORPORATE DISCLOSURE STATEMENT

Pursuant Federal Rules of Appellate Procedure 26.1 and 29(a)(4)(A),

Creative Commons Corporation states that it does not have a parent corporation,

and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**

STATEMENT OF INTEREST .................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................2

BACKGROUND ......................................................................................2

      A.    Creative Commons .................................................................2

      B.    This Litigation .....................................................................4

ARGUMENT ..........................................................................................6

I.     THE PLAIN LANGUAGE OF THE LICENSE RELIED UPON BY
      THE SCHOOL DISTRICT AND SETTLED PRINCIPLES OF
      COPYRIGHT LAW AUTHORIZE THE CONDUCT AT ISSUE
      AND SHIELD OFFICE DEPOT ..................................................7

      A.    The License Allows The School District To Exercise Its
            Licensed Rights Through Contractors Acting For Profit.....................8

      B.    Office Depot Is Not A Licensee ...........................................12

II.    GREAT MINDS' ERRONEOUS INTERPRETATION OF
      CREATIVE COMMONS' LICENSE WOULD UNDULY
      RESTRICT THE USE OF MANY OTHER WORKS GOVERNED
      BY THE SAME LICENSE ........................................................17

CONCLUSION .......................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. Lear, Inc.*,
  67 Cal. 2d 882, 435 P.2d 321 (1967) .................................................................12

*Automation by Design, Inc. v. Raybestos Prods. Co.*,
  463 F.3d 749 (7th Cir. 2006) .......................................................................8, 10

*Great Minds v. FedEx Office & Print Servs., Inc.*,
  886 F.3d 91 (2d Cir. 2018) ...................................................................................8

*Estate of Hevia v. Portrio Corp.*,
  602 F.3d 34 (1st Cir. 2010) ................................................................................8

*Hogan Sys., Inc. v. Cybresource Int'l, Inc.*,
  158 F.3d 319 (5th Cir. 1998) .............................................................................8

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cr. 2008) ........................................................................14

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  136 S. Ct. 1979 (2016)........................................................................................8

*U.S. Naval Inst. v. Charter Commc'ns, Inc.*,
  875 F.2d 1044 (2d Cir. 1989) ..........................................................................12

## STATUTES

17 U.S.C. § 106(2) ...................................................................................................18

17 U.S.C. § 106(4) .............................................................................................17, 18

## RULES

Fed. R. App. P. 29(a)(4)(E).......................................................................................1

## OTHER AUTHORITIES

Creative Commons, *About the Licenses*,
  https://creativecommons.org/licenses/...............................................................3

Creative Commons, *License Conditions*,
https://creativecommons.org/share-your-work/licensing-types-
examples/ ...............................................................................................4

Creative Commons, *Mission and Vision*,
https://creativecommons.org/about/mission-and-vision/...............................3, 19

## STATEMENT OF INTEREST[1]

Creative Commons (sometimes called "CC") is a 501(c)(3) nonprofit organization that operates globally to enable the sharing and reuse of creative works around the world. In pursuit of that mission, Creative Commons makes available and maintains a suite of standard, "off-the-shelf" copyright licenses that signal and convey *ex ante* the permissions authors wish to grant for uses of their works that copyright law prohibits by default.

This lawsuit turns on the interpretation of one of those licenses: the Creative Commons Attribution–NonCommercial–ShareAlike 4.0 International Public License (known to the world as "CC BY-NC-SA 4.0," and referenced in the parties' briefing as the "Public License" or the "Creative Commons Public License"). When an author such as Great Minds shares a work using the license, anyone may legally use, copy, and distribute the licensed material for "NonCommercial" purposes, a term defined in the license, on the conditions that they attribute Great Minds and share derivative works under the same terms. This particular license in its current and prior versions has been applied to more than 150 million creative works all over the world. Those works have in turn been reused, under the terms of the license, by

---

[1]     Pursuant to Federal Rule of Appellate Procedure 29(a)(4)(E), Creative Commons states that no party's counsel authored this brief in whole or in part, and no party, party's counsel, or person other than Creative Commons or its members or counsel contributed money intended to finance the preparation or submission of this brief.

multitudes more.  The judicial interpretation of the license at issue here is thus a matter of significant interest for Creative Commons, its author and steward.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Creative Commons appreciates the valuable contributions to the development of open educational resources made by Great Minds, along with its use of a standard CC public license to enable broad reuse of the materials it produces.  However, its interpretation of the Creative Commons license at issue in this lawsuit is incorrect.  As the U.S. Court of Appeals for the Second Circuit correctly determined in Great Minds' prior suit against another copy shop, FedEx Office, the license authorizes a *bona fide* non-commercial user to discharge her licensed rights by directing a third party like Office Depot to make copies at her instruction.  Creative Commons welcomes and respectfully seeks a similar holding from this Court:

> Under the Creative Commons "NonCommercial" license at issue, a *bona fide* non-commercial user may engage contractors to exercise the non-commercial user's own licensed rights on behalf and at the direction of the non-commercial user, irrespective of whether the contractor is itself non-commercial actor.

## BACKGROUND

### A.    Creative Commons

Creative Commons was founded to help creators share their knowledge and creativity easily and legally in the digital era and the increasingly complex world

2

of copyright. The organization's vision, at the highest level, is to help "realize the full potential of the Internet—universal access to research and education, full participation in culture—to drive a new era of development, growth, and productivity." Creative Commons, *Mission and Vision*, https://creativecommons.org/about/mission-and-vision/ (last visited August 17, 2018). For the past 16 years, it has pursued that goal through the development, support, and stewardship of a set of free legal and technical tools for creators, educators, and scientists—most prominently, a suite of free-to-use, "off the shelf" copyright licenses that anyone can apply to share their creative works. *See generally* Creative Commons, *About the Licenses*, https://creativecommons.org/licenses/ (last visited August 17, 2018).

First launched in 2002, these licenses give everyone from individual creators to large companies and institutions a simple, standardized mechanism to grant permissions to use their works in ways that copyright law otherwise prohibits. They have been crafted to work with copyright, not at odds with the exclusive rights granted authors. They empower creators to give the public-at-large permission to copy, distribute, and use the authors' works under certain, specific conditions. If a licensee violates a condition of a CC license, the license automatically terminates and the user becomes a copyright infringer (unless the breach is cured within a specified time period). By the same token, CC licenses do

3

not restrict uses of copyrighted works that are allowed as a matter of law, such as fair uses, distributions beyond a first sale, and the like.

When adopting a CC license, creators choose from a standardized set of conditions they wish to apply to reuses of their work that need permission. All of the CC licenses require that the licensor be properly attributed. Additionally, some of the licenses prohibit commercial uses and/or the distribution of derivative works. And a few require that any derivative works that are created (if allowed by the license) be shared under the same license terms as applied by the licensor. *See generally* Creative Commons, *License Conditions*, https://creativecommons.org/share-your-work/licensing-types-examples/ (last visited August 17, 2018).

### B. This Litigation

Great Minds is a publisher. According to the Complaint in this action, it produced certain curricular material for schools and released them under the terms of the CC BY-NC-SA 4.0 license. ER 58-59 ¶¶ 10, 13. Office Depot owns and operates retail stores that provide, among other things, printing and photocopying services to the public. ER 56-57 ¶ 4. Great Minds' theory of the case is that Office Depot engages in conduct outside the scope of the CC BY-NC-SA 4.0 license when, at the direction and under the engagement of a school district, Office Depot makes copies of Great Minds' curricular material, which the school

4

district's teachers then distribute for use in classrooms by students. *See* ER 56, 59, 62, 64 ¶¶ 1, 14, 26, 35.

Great Minds appears not to dispute that the school district's own use and distribution of copies of the material is "NonCommercial" and thus permitted by the license. *See* ER 57-60 ¶¶ 9-11, 13-14, 17. And under Great Minds' understanding of the license, there is evidently nothing unlawful about a school district's own employee going to an Office Depot store and paying to use the copiers there, herself. But Great Minds argues that when the same employee pays the same Office Depot store to conduct the copying on her behalf, (1) Office Depot becomes a licensee under the CC BY-NC-SA 4.0 license in its own right; (2) its conduct is not "NonCommercial" and thus falls outside the scope of the license's protection; and therefore (3) Office Depot engages in copyright infringement. ER 58-59, 62-64 ¶¶ 13-14, 26, 30, 35; Op. Br. at 27-44.[2]

---

[2]     The Complaint also includes several paragraphs concerning Office Depot's alleged solicitation of the business of copying works governed by Creative Commons licenses. *See* ER 63-64 ¶¶ 30, 32-33, 35. The district court held that those allegations change nothing about the operative legal analysis, *inter alia* because in the course of the alleged solicitation, Office Depot did not (even allegedly) engage in conduct that would be a *prima facie* act of infringement of any of copyright's exclusive rights—for example, making or distributing a copy of Great Minds' copyrighted materials in advance to pursue business leads. *See* ER 8 ("'[S]oliciting' business is not, and cannot be, an act of infringement in and of itself."). Office Depot's opening brief does not address this aspect of the district court's decision, much less contend that it was erroneous. Accordingly, we do not address it here, beyond noting that Creative Commons agrees with the district

**ARGUMENT**

The CC BY-NC-SA 4.0 license fully authorizes the conduct that Great Minds contends on appeal is unlawful. The only licensee here is the school district. Under the terms of the license and prevailing principles of law, a school district may permissibly use Office Depot as a means by which the school district exercises its own licensed rights. The license does not restrict the school district to using only its own *employees* to exercise those rights; it allows the school district to engage anyone—employees and non-employee contractors alike—to do so. To establish a rule that denies a licensee the ability to use non-employee actors to exercise the rights it is lawfully entitled to exercise would contravene the plain language of the license and established precedent.

To be sure, Office Depot could not on its own initiative make copies of Great Minds' curricular materials and sell them for a profit. In that scenario, Office Depot would not be acting at the direction of a *bona fide* licensee, would not be shielded by any *bona fide* licensee's license, and thus would itself need to rely on the terms and conditions of the CC BY-NC-SA 4.0—including limiting its conduct to non-commercial purposes when reproducing the licensed work. But that is not what is alleged here. Instead, on the facts as pleaded, the school district

court's analysis, insofar as Creative Commons licenses apply only when a reuser engages in conduct that requires a copyright license in the first place.

6

has, under *its* license from Great Minds, engaged Office Depot to make copies and paid Office Depot for the service, just as it could have paid an employee to make the same copies at an Office Depot store. In that scenario, Office Depot is not a licensee in its own right, and its own, independent purpose is analytically irrelevant.

## I. THE PLAIN LANGUAGE OF THE LICENSE RELIED UPON BY THE SCHOOL DISTRICT AND SETTLED PRINCIPLES OF COPYRIGHT LAW AUTHORIZE THE CONDUCT AT ISSUE AND SHIELD OFFICE DEPOT

The CC BY-NC-SA 4.0 license permits the school district to exercise its rights via contractors like Office Depot. That is all that has happened here. Office Depot, being shielded by the school district's license, is not a licensee of Great Minds in its own right, just as employees of the school district are not individually each licensees of Great Minds when they distribute the copies Office Depot made for the school district. *Cf.* Op. Br. at 37-38 (apparently contending that each teacher is a licensee in her own right, evidently subject to the same NonCommercial restriction as the school district itself). Because Office Depot is not, itself, a licensee based on the actions it undertook solely at the behest of a *bona fide* licensee, the "NonCommercial" restriction does not apply to Office Depot's conduct, just as it does not apply to a salaried teacher making copies of the same content for use in her classroom.

7

A.     **The License Allows The School District To Exercise Its Licensed Rights Through Contractors Acting For Profit**

As the Second Circuit correctly held in Great Minds' suit against FedEx Office, "a licensee under a non-exclusive copyright license may use third-party assistance in exercising its licensed rights unless the license expressly provides otherwise." *See Great Minds v. FedEx Office & Print Servs., Inc.*, 886 F.3d 91, 94 (2d Cir. 2018). Courts have long recognized that "what [a copyright licensee] could itself do under the License, [the licensee] may use a contractor to do[,]" absent a contrary indication in the license. *Hogan Sys., Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 324 (5th Cir. 1998) (citation omitted), *overruled in part on other grounds*, *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979 (2016); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 44-45 (1st Cir. 2010) ("When . . . there is no indication that a license-granting copyright owner has restricted the licensee's ability to use third parties in implementing the license, the license is generally construed to allow such delegation."); *Automation by Design, Inc. v. Raybestos Prods. Co.*, 463 F.3d 749, 758 (7th Cir. 2006) ("[W]hatever rights Raybestos [as licensee] had to duplicate, it could hire PDSI [as a third-party contractor] to do so in its stead."). Doing so does not constitute copyright infringement by the licensee or the third-party contractor, whose "activities are 'sheltered under' [the licensee's] rights." *Hogan*, 158 F.3d at 324 (citation omitted); *see also Raybestos*, 463 F.3d at 761 (affirming summary judgment for

8

the licensee and the contractor).

The CC BY-NC-SA 4.0 license contains no provision abrogating these principles, nor does it provide any indication of an intention to depart from the general rule. The license simply and unequivocally grants:

> . . . You a worldwide, royalty-free, non-sublicensable, non-exclusive, irrevocable license to exercise the Licensed Rights in the Licensed Material to . . . reproduce and Share the Licensed Material, in whole or in part, for NonCommercial purposes only . . . .

ER 81-82 (License § 2(a)(1)). "You" is a defined term that "means the individual *or entity* exercising the Licensed Rights under this Public License." ER 81 (License § 1(n) (emphasis added)).

Licensees who are not individuals—*i.e.*, the legal entities expressly mentioned in the definition of "You"—are of course permitted to exercise the licensed rights through their human and other delegates, because entities can *act* only through others operating on their behalf and at their direction. Neither the license grant noted above, nor the definition of "You," nor anything else in the text of the license limits *which* delegates an entity-licensee may permissibly act through. There is thus no principled basis to conclude that the definition of "You" would authorize *employee* delegates acting on behalf of an entity-licensee, yet not *other* actors, including contractors acting at its direction. To draw a line between employee-delegates, on one hand, and non-employee-delegates, on the other, would be to fabricate from whole cloth a distinction with no grounding in the text

9

of the license or background principles of copyright law. *See Raybestos*, 463 F.3d at 757 (refusing to distinguish between agents and independent contractors for purposes of the delegation rule).

It is true of course that under the CC BY-NC-SA 4.0 license, *a licensee* may use the work only for "NonCommercial purposes." As the license defines that term, the licensee's use must not be "primarily intended for or directed towards commercial advantage or monetary compensation." ER 81 (License § 1(k) (defining "NonCommercial")). But this is a limitation on *the licensee's* rights, and thus it is only *the licensee's* "primar[y] inten[t]" when it uses the licensed content that matters: The actor whose use must be "NonCommercial" is "You" (the party bound by the license, here the school district). ER 81-82 (License § 2(a)(1)(A)); *see also* ER 81 (License § 1(n), (k)).

There is apparently no dispute in this case that the school district's use is "NonCommercial." And because the school district is thus itself licensed to use the work, there is no mechanism in the license by which the "NonCommercial" restriction is transferred to other actors when they are acting specifically at the school district's direction and in furtherance of the school district's "NonCommercial" purpose. If there were, every non-profit entity—from charities to school districts alike—would be forced to decipher whether each of its employees independently had her own "NonCommercial" purpose in discharging

10

her job duties, upon pain of copyright infringement liability (at least for the employee, and potentially for the employer) if it turned out she did not. That is not how Creative Commons licenses work. Instead, the "NonCommercial" license (1) imposes the "NonCommercial" restriction on *the licensee* alone, not those acting on its behalf under the protection of the licensee's own license, (2) makes the licensee's purpose, not the purposes of those it uses to exercise the licensed rights, the only purpose that matters, and (3) allows the licensee to exploit its own licensed rights via others acting at its direction, even if they have a commercial interest themselves when doing so.[3]

The alternative view would yield arbitrary results. Under Great Minds' theory, it would apparently be permissible for a school district employee to push "copy" and pay Office Depot for use of its copier,[4] but not for an Office Depot employee to push "copy" on the same machine when the school district employee asks for assistance and the Office Depot employee hits "copy" to demonstrate how

---

[3]    Great Minds quotes selectively from a study Creative Commons conducted in 2009 in support of its contrary interpretation of the how the CC BY-NC-SA 4.0 license operates. Op. Br. 56. The Court should know that neither the passages cited nor the broader investigation have anything to do with the issue on appeal. It is of precisely zero relevance here and it is misleading for Great Minds to suggest otherwise.

[4]    More precisely, this would be evidently permissible in Great Minds' view so long as the school district's employee, *himself*, had a "NonCommercial" purpose in dutifully exercising his professional responsibilities—rather than, say, the primary purpose of doing his job to receive a salary.

the machine works. *See* Op. Br. 27-31 (discussing the "volitional conduct"

doctrine). That distinction has nothing to do with whether a CC-licensed work is

being reproduced for non-commercial ends—*i.e.*, what the license is designed to

regulate. *Cf. Adkins v. Lear, Inc.*, 67 Cal. 2d 882, 906, 435 P.2d 321, 336 (1967),

*vacated on other grounds*, 395 U.S. 653 (1969) (refusing to "construe the license

agreement in a manner so manifestly alien to its entire purpose"); *U.S. Naval Inst.*

*v. Charter Commc'ns, Inc.*, 875 F.2d 1044, 1049-50 (2d Cir. 1989) (explaining that

when interpreting a copyright license agreement, courts should "giv[e] due

consideration to the purpose to be accomplished and the object to be advanced").

Instead, as discussed further below, it would preclude the use by individuals and

small non-profits of many standard channels of dissemination to accomplish their

permissible, non-commercial goals. Particularly where the licensee is an entity, it

must be allowed to act as entities do, through employees and contractors alike, if

the ends Creative Commons licenses are designed to enable are to be fully realized.

### B. Office Depot Is Not A Licensee

Because Office Depot's conduct is shielded by the school district's license,

Office Depot does not need to depend on its own, separate license for the conduct

at issue in this litigation, and thus is not a licensee in its own right.

A party becomes bound by the CC BY-NC-SA 4.0 license "[b]y exercising

the Licensed Rights." *See* ER 81 (License at 1).[5]  Where the conduct at issue does

*not* independently require permission of the licensor, however, the actor is not

bound by the restrictions of the license.  The license contains numerous provisions

that make this design principle unambiguously clear.  *See, e.g.*, ER 82 (License

§ 2(a)(2)) ("For the avoidance of doubt, where Exceptions and Limitations apply to

Your use, this Public License does not apply, and You do not need to comply with

its terms and conditions.");[6] *see also* ER 84 (License § 8(a)) ("For the avoidance of

doubt, this Public License does not, and shall not be interpreted to, reduce, limit,

restrict, or impose conditions on any use of the Licensed Material that could

lawfully be made without permission under this Public License.").  A contrary

interpretation could have the perverse effect of automatically subjecting any person

coming into contact with the licensed work to the license's limitations, as a

licensee in his or her own right—irrespective of whether (i) the user was shielded

by a third party's license (as here), (ii) the user had a direct license from the

rightsholder, or (iii) the user was otherwise engaged in conduct that the law

---

[5]    The license defines the term "Licensed Rights" as "the rights granted to You subject to the terms and conditions of this Public License[.]"  *See* ER 81 (License § 1(i)).

[6]    The License defines the term "Exceptions and Limitations" to mean "fair use, fair dealing, and/or any other exception or limitation to Copyright and Similar Rights that applies to Your use of the Licensed Material."  *See* ER 81 (License § 1(f)).

expressly permits. It is not the purpose of Creative Commons licenses to restrict such otherwise-permissible conduct, nor is it consistent with their plain text and structure.

Great Minds suggests that Office Depot must be bound by the license because it is a "[d]ownstream recipient" within the meaning of license section 2(a)(5)(A). *See, e.g.*, Op. Br. at 40; ER 59-60 ¶ 16, ER 82 (License § 2(a)(5)(A)) ("Every recipient of the Licensed Material automatically receives an offer from the Licensor to exercise the Licensed Rights under the terms and conditions of this Public License.").[7] This interpretation misconstrues the plain meaning of the provision. Section 2(a)(5)(A) provides that the license is available to anyone who needs it for *conduct not otherwise allowed by copyright law*. It does not say that the license binds everyone who touches the work, nor is it intended to trump the

---

[7]     Great Minds quotes from Creative Commons' *amicus curiae* brief in the case of *Jacobsen v. Katzer* to support its assertion that Office Depot should be considered a "downstream recipient" of the licensee. 535 F.3d 1373 (Fed. Cr. 2008); Op. Br. at 32-33. That litigation in general, and that brief in particular, had nothing to do with this case. In *Jacobsen*, the defendant had copied and distributed the plaintiff's software without any pretense of permission other than the open source license under which it had been released. *See* 535 F.3d at 1377, 1379 ("Jacobsen has made out a prima facie case of copyright infringement."). The "heart of the argument on appeal" was whether the breach of one of those license terms gave rise to copyright infringement liability, or liability for breach of contract. *Id*. at 1380. Creative Commons argued that infringement liability should attach, because that would further the public aims of the license. Nothing about that case or Creative Commons' position in it means that a public license should be interpreted narrowly, much less so narrowly as to foreclose standard uses that are necessary for the license to operate as intended.

numerous other provisions of the license making clear that the license (including both its authorizations and its restrictions) has no purchase on actors whose conduct does not require permission. Great Minds' repeated assertion that the "NonCommercial" restriction binds "every individual or entity that reproduces or distributes the licensed materials" is thus flatly incorrect. *Cf.* Op. Br. at 3-4. It doesn't, if their conduct doesn't require a license in the first place.

Of course, it is absolutely the case that when a licensee shares a CC-licensed work with a third party *not protected by the licensee's own license*, then that third party is itself subject to the terms of the license when exercising the Licensed Rights—*i.e.*, when engaging in conduct that would be an infringement but for some needed permission, where neither the law nor any other license grants such permission. When a school district shares copies of Great Minds' curriculum on the Internet, for example (which the license expressly allows), *others* who find the work online must rely on and comply with the CC BY-NC-SA 4.0 license in connection with *their* use of the material (absent some other source of permission or limitation on copyright's reach). Great Minds is thus mistaken when it argues that under the district court's ruling, "any individual or entity may commercially exploit *Eureka Math* without paying Great Minds a royalty simply by pointing to the inevitable downstream noncommercial use by a customer." Op. Br. at 3. Not so. A for-profit actor who simply locates a work governed by a Creative

15

Commons NonCommercial license and makes a copy in the hope that it will subsequently find a non-profit actor to sell the copy to down the line is not operating at the direction of a licensee, is plainly subject to the terms of the license, and has presumably violated them.

But that is not this case. Office Depot apparently does not independently copy the licensed works, but instead acts only on behalf and at the direction of the school district when it reproduces the curricular material made available by Great Minds. On those facts, Office Depot itself does not need the CC license's permissions because the school district's license extends to all employees and non-employee contractors operating on its behalf and at the school district's direction. Having engaged in no alleged conduct outside of the scope of its engagement by the school district—*i.e.*, no conduct that required its own license—Office Depot is not a licensee under the CC BY-NC-SA 4.0 license for the conduct at issue.[8]

---

[8]     Technically speaking, even if Office Depot *were* somehow subject to the CC BY-NC-SA 4.0 license, the school district's license would still shelter Office Depot's conduct carried out at the school district's direction. A party bound by a Creative Commons license is of course always free to avail itself of alternative forms of permission in addition to those the license offers. Here, because the school district may permissibly employ Office Depot's services in the manner alleged in the Complaint, Office Depot could depend on the protections and permissions afforded by the school district's license—for the limited purpose of the conduct evidently at issue in this litigation—even if Office Depot were otherwise bound by the license.

## II. GREAT MINDS' ERRONEOUS INTERPRETATION OF CREATIVE COMMONS' LICENSE WOULD UNDULY RESTRICT THE USE OF MANY OTHER WORKS GOVERNED BY THE SAME LICENSE

Great Minds argues that the district court's "erroneous opinion will affect all who use the Public License in reliance on the commonly understood meaning of its plain terms," Op. Br. at 6, and that the Second Circuit's *FedEx Office* opinion "leads directly to absurd results that undermine the purpose and function of the Public License[,]" *id*. at 37. But it is Great Minds' own erroneous understanding of Creative Commons' license that, if embraced by the Court, would thwart the purpose of the license and yield negative consequences for the broader Creative Commons community.

Specifically, Great Minds' limited view of the CC BY-NC-SA 4.0 license would upset the settled expectations of users of other (already-existing) CC-licensed works. It would prevent them from employing routine, standard channels for copying, sharing, and otherwise engaging in the very conduct the license authorizes and encourages in order to carry out their *bona fide* non-commercial ends. A ruling to that effect would impede the utility of the license.

Under Great Minds' interpretation, for example, although an individual licensee would be perfectly free to show a CC BY-NC-SA 4.0-licensed film—free of charge—in her backyard at a neighborhood block party, she could not pay an experienced projectionist to operate the projector. *See* 17 U.S.C. § 106(4)

17

(affording copyright owners the exclusive right to publicly perform their works). Nor could she pay a theatre to allow her to show the same people—free of charge—the same movie. *See id.* Similarly, although a small non-profit licensee would *itself* be free to translate CC-licensed educational materials into a different language for use overseas using its own employees (so long as they each had their own independent non-commercial purpose, anyway), it would be prohibited from engaging a commercial translation service to do so on its behalf. *See id.* § 106(2) (affording copyright owners the exclusive right to prepare derivative works, such as translations).

By precluding such common-sense, typical delegations, Great Minds' interpretation needlessly and arbitrarily limits the ability of individuals and small companies to share, build upon, and disseminate CC-licensed works. Great Minds' reading would require the non-commercial-using public to be completely vertically integrated, having on its payroll all manner of employees—but *not* independent contractors—fully capable of performing every conceivable task associated with exercising the rights granted under the license, including simple reproduction. That construction would effectively reserve the only useful and meaningful avenues for exercising the licensed rights granted by a CC "NonCommercial" license to the largest, most profitable or well-endowed organizations—those that have the financial means and ability to employ their own armies of charitably-

minded creators, reproducers, translators, and the like. That would be antithetical to the licenses' *raison d'être* and inconsistent with the manner in which CC-licensed works are being used and shared all over the world today. *See* Creative Commons, *Mission and Vision*, https://creativecommons.org/about/mission-and-vision/ (last visited August 17, 2018) ("Creative Commons develops, supports, and stewards legal and technical infrastructure that maximizes digital creativity, sharing, and innovation.").

The CC BY-NC-SA 4.0 license governs many millions of copyrighted works. The reading of the license that furthers Creative Commons' goals—and what Creative Commons hopes are the goals of those who uses its licenses—is one that renders the license *useful* for its intended purpose, allowing non-commercially motivated licensees to make productive reuses of licensed content via "any means or process" without having to own all the means necessary to do so. *See* ER 81 (License § 1(l) (definition of "Share")). Creative Commons thus respectfully asks the Court not to thwart the utility of the CC BY-NC-SA 4.0 license with an interpretation that significantly circumscribes what people can do with the myriad works it governs.

## CONCLUSION

For the foregoing reasons, *amicus* Creative Commons respectfully urges the

Court to affirm the district court's order.


August 20, 2018                          Respectfully submitted,

                                         s/ Andrew M. Gass
                                         Andrew M. Gass
                                         Elizabeth H. Yandell
                                         LATHAM & WATKINS LLP
                                         505 Montgomery Street
                                         Suite 2000
                                         San Francisco, CA 94111
                                         (415) 391-0600

                                         Diane M. Peters
                                         CREATIVE COMMONS
                                         CORPORATION
                                         P.O. Box 1866
                                         Mountain View, CA 94042
                                         (415) 429-6753

                                         *Counsel for Amicus Curiae Creative*
                                         *Commons Corporation*

**Form 8.** **Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number** 18-55331

Note: This form must be signed by the attorney or unrepresented litigant *and attached to the end of the brief.*

I certify that (*check appropriate option*):

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 28.1-1.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☒ This brief complies with the length limits permitted by Ninth Circuit Rule 32-1.
The brief is [4,775] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits permitted by Ninth Circuit Rule 32-2(b).
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable, and is filed by (1) ☐ separately represented parties; (2) ☐ a party or parties filing a single brief in response to multiple briefs; or (3) ☐ a party or parties filing a single brief in response to a longer joint brief filed under Rule 32-2(b). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the longer length limit authorized by court order dated [_____]
The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 32-2 (a) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32 (f), if applicable. The brief's type size and type face comply with Fed. R .App. P. 32(a)(5) and (6).

☐ This brief is accompanied by a motion for leave to file a longer brief pursuant to Ninth Circuit Rule 29-2 (c)(2) or (3) and is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4.
The brief is [_____] words or [_____] pages, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Signature of Attorney or Unrepresented Litigant [ s/ Andrew M. Gass ]   Date [ Aug 20, 2018 ]

("s/" plus typed name is acceptable for electronically-filed documents)

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2018, I electronically filed the forgoing Brief of Amicus Curiae Creative Commons in Support of Appellee and Affirmance of the District Court with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ Andrew M. Gass
Andrew M. Gass
LATHAM & WATKINS LLP
505 Montgomery Street
Suite 2000
San Francisco, CA 94111
(415) 391-0600

*Counsel for Amicus Curiae Creative Commons Corporation*